Slip Op. 21-7

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| MIDWEST FASTENER CORP., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MID CONTINENT STEEL & WIRE, INC., <br><br> Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Court No. 17-00231 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's second remand redetermination that strike pin anchors are within the scope of the antidumping duty order covering certain steel nails from the People's Republic of China.]

Dated: January 21, 2021

Robert Kevin Williams and Mark Rett Ludwikowski, Clark Hill PLC, of Chicago, IL, for plaintiff, Midwest Fastener Corp.

Sosun Bae, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the briefs were Patricia M. McCarthy, Assistant Director, Jeanne E. Davidson, Director, Ethan P. Davis, Acting Assistant Attorney General, and Jeffrey Bossert Clark, Acting Assistant Attorney General. Of Counsel were Vania Y. Wang and Jared Cynamon, Attorneys, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Court No. 17-00231 Page 2

Adam Henry Gordon and Ping Gong, The Bristol Group PLLC, of Washington, DC, for defendant-intervenor, Mid Continent Steel & Wire, Inc.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") second remand redetermination filed pursuant to the court's order in Midwest Fastener Corp. v. United States, 44 CIT __, 435 F. Supp. 3d 1262 (2020) ("Midwest II"). See Final Results of Redetermination Pursuant to Ct. Remand [in Midwest II], June 17, 2020, ECF No. 87-1 ("Second Remand Results"). In Midwest II, the court remanded for a second time Commerce's determination that Midwest Fastener Corp.'s ("Midwest" or "Plaintiff") strike pin anchors are within the scope of the antidumping duty ("ADD") order covering certain steel nails from the People's Republic of China ("PRC"). See Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1272; see also Midwest Fastener Corp. v. United States, 42 CIT __, __, 348 F. Supp. 3d 1297, 1302 (2018) ("Midwest I"); [ADD] Order on Certain Steel Nails from the [PRC]: Final Ruling on Midwest Fastener Strike Pin Anchors, (Aug. 2, 2017), ECF No. 21-3 ("Final Scope Ruling"); Final Results of Redetermination Pursuant to Ct. Remand, Apr. 25, 2019, ECF No. 61 ("Remand Results"); Certain Steel Nails from the [PRC], 73 Fed. Reg. 44,961 (Dep't Commerce Aug. 1, 2008) (notice of [ADD] order) ("PRC Nails Order"). Commerce, under respectful protest,[1] continued to find that Midwest's strike pin anchors fall within the scope of the PRC Nails Order. See generally Second Remand Results. On August 28, 2020, the Court of Appeals for the Federal Circuit

---

[1] By adopting a position "under protest," Commerce preserves its right to appeal. See Viraj Grp., Ltd. v. United States, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

Court No. 17-00231 Page 3

("Court of Appeals") decided <u>OMG, Inc. v. United States</u>, 972 F.3d 1358 (Fed. Cir. 2020), <u>aff'g</u> 43 CIT __, 389 F. Supp. 3d 1312 (2019) ("<u>OMG</u>"), interpreting nearly identical language in the ADD and countervailing duty ("CVD") orders covering certain steel nails from, in pertinent part, the Socialist Republic of Vietnam ("Vietnam"). For the following reasons, the court reconsiders its ruling in <u>Midwest I</u>, and remands Commerce's <u>Second Remand Results</u> with instructions to render its determination in conformity with <u>OMG</u>.

## BACKGROUND

The court assumes familiarity with the facts as set forth in its previous opinion and recounts the facts relevant to the issues currently before the court. <u>See</u> <u>Midwest II</u>, 44 CIT at __, 435 F. Supp. 3d at 1265–66. On August 1, 2008, Commerce issued the <u>PRC Nails Order</u>, which covers, in pertinent part, "nails . . . constructed of two or more pieces." <u>See</u> <u>PRC Nails Order</u>, 73 Fed. Reg. at 44,961. Midwest is an importer of strike pin anchors.[2]  On August 2, 2017, Commerce, at Midwest's request, issued

---

[2] As explained in the previous opinion:

> Midwest's strike pin anchors have four components—a steel pin, a threaded body, a nut and a flat washer. Midwest avers that the pin component is not meant to be removed from the anchor and can only be removed with the aid of a claw hammer or pliers. The strike pin anchor is prepared for use by first drilling a hole through an object, and then drilling another hole into the masonry upon which the object is to be attached. After the two holes are aligned, the anchor is pushed through the hole in the object and into the hole in the masonry. The nut and washer components are then tightened to orient and position the anchor,

(footnote continued)

Court No. 17-00231                                                                                              Page 4

a final scope ruling determining that Midwest's strike pin anchors are unambiguously covered by the scope of the PRC Nails Order based on the plain language of the order, as well as its analysis of sources enumerated under 19 C.F.R. § 351.225(k)(1) (2017).[3] See Final Scope Ruling at 10–13. As such, Commerce did not perform an analysis of factors enumerated under § 351.225(k)(2) ("(k)(2) analysis"). Id.

In Midwest I, the court remanded Commerce's determination, holding that neither the plain language of the PRC Nails Order, nor Commerce's analysis under 19 C.F.R. § 351.225(k)(1) "explain what it means for a product to be a nail constructed of two or more pieces." Midwest I, 42 CIT at __, 348 F. Supp. 3d at 1302 (discussing Commerce's reliance on prior scope determinations and a report of the U.S. International Trade Commission). After consulting dictionary definitions of the terms "nails" and "constructed", the court concluded that Commerce's determination that the PRC Nails Order unambiguously covers strike pin anchors is unsupported by substantial evidence and remanded for Commerce to conduct a formal scope inquiry and (k)(2) analysis. Midwest I, 42 CIT at __, 348 F. Supp. 3d at 1306.

On remand, Commerce continued to assert that the PRC Nails Order unambiguously covers Midwest's strike pin anchors, Remand Results at 7–11, but

---

and the pin component is subsequently struck with a hammer. The action of striking the pin component expands the anchor body and results in the fastening of the desired item against the masonry.

Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1265–66 (citations omitted).

[3] Further citations to the Code of Federal Regulations are to the 2017 edition.

Court No. 17-00231                                                                                           Page 5

conducted a (k)(2) analysis under protest. Id. at 11–19. In Midwest II, the court held Commerce's position that the scope of the order unambiguously covers Midwest's strike pins anchors was unsupported by substantial evidence because Commerce's analysis did not reasonably demonstrate how the phrase "nails . . . constructed of two or more pieces" encompasses the strike pin anchors. See Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1267–71; see also PRC Nails Order, 73 Fed. Reg. at 44,961. The court also held that Commerce's (k)(2) analysis erred in several respects, see Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1271–72, and rejected Commerce's attempt to find only the pin component dutiable. See id. at __, 435 F. Supp. 3d at 1273.

For its second remand redetermination, Commerce again maintained that the PRC Nails Order is unambiguous, but conducted a revised (k)(2) analysis in light of Midwest II. See Second Remand Results at 6–28. However, after briefing on the Second Remand Results before this court concluded, the Court of Appeals issued OMG. See generally 972 F.3d 1358. In OMG, the Court of Appeals affirmed a decision of this Court disposing of an appeal from Commerce's final ruling clarifying the scope of ADD and CVD orders covering certain steel nails from, in pertinent part, Vietnam. See generally id.; see also Certain Steel Nails from [Vietnam], 80 Fed. Reg. 41,006 (Dep't Commerce July 14, 2015) ([CVD] order) ("Vietnam CVD Order"); Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and [Vietnam], 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015) ([ADD] orders) ("Vietnam ADD Order") (collectively, "Vietnam Orders").

Court No. 17-00231 Page 6

As with the PRC Nails Order, the pertinent language from the Vietnam Orders states that the orders cover "[c]ertain steel nails . . . of one piece construction or constructed of two or more pieces." Compare Vietnam CVD Order, 80 Fed. Reg. at 41,006 (citations omitted), and Vietnam ADD Order, 80 Fed. Reg. at 39,995 (citations omitted), with PRC Nails Order, 73 Fed. Reg. at 44,961.[4] As such, the court requested

---

[4] The scope language with respect to the Vietnam Orders and PRC Nails Order are nearly identical. In pertinent part, the Vietnam Orders cover:

> certain steel nails having a nominal shaft length not exceeding 12 inches. Certain steel nails include, but are not limited to, nails made from round wire and nails that are cut from flat-rolled steel. Certain steel nails may be of one piece construction or constructed of two or more pieces. Certain steel nails may be produced from any type of steel, and may have any type of surface finish, head type, shank, point type and shaft diameter. Finishes include, but are not limited to, coating in vinyl, zinc (galvanized, including but not limited to electroplating or hot dipping one or more times), phosphate, cement, and paint. Certain steel nails may have one or more surface finishes. Head styles include, but are not limited to, flat, projection, cupped, oval, brad, headless, double, countersunk, and sinker. Shank styles include, but are not limited to, smooth, barbed, screw threaded, ring shank and fluted. Screw-threaded nails subject to this proceeding are driven using direct force and not by turning the nail using a tool that engages with the head. Point styles include, but are not limited to, diamond, needle, chisel and blunt or no point.

Vietnam CVD Order, 80 Fed. Reg. at 41,006 (citations omitted); Vietnam ADD Order, 80 Fed. Reg. at 39,995 (citations omitted). The PRC Nails Order covers:

> certain steel nails having a shaft length up to 12 inches. Certain steel nails include, but are not limited to, nails made of round wire and nails that are cut. Certain steel nails may be of one piece construction or constructed of two or more pieces. Certain steel nails may be produced from any type of steel, and have a variety of finishes, heads, shanks, point types, shaft lengths and shaft diameters. Finishes include, but are

(footnote continued)

the parties brief their respective positions on the relevance of OMG to the disposition of this action. See Letter Req. Suppl. Briefing, Sept. 8, 2020, ECF No. 93.

In their responses, all parties indicated that whether Midwest's anchors fall within the scope of the order should be reconsidered in light of OMG. See Def.'s Resp. Ct.'s Order on Suppl. Briefing, Nov. 3, 2020, ECF No. 97; Def.-Intervenor's Resp. Ct.'s Order on Suppl. Briefing, Nov. 3, 2020, ECF No. 98; Pl.'s Resp. Ct.'s Order on Suppl. Briefing, Nov. 4, 2020, ECF No. 99.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over Plaintiff's challenge to Commerce's scope determination pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[5] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting scope determinations that find certain merchandise to be within the class or kind of merchandise described in an ADD or CVD order. See 19 U.S.C. § 1516a(a)(2)(B)(vi); 28 U.S.C. § 1581(c) (2012). The court

---

not limited to, coating in vinyl, zinc (galvanized, whether by electroplating or hot dipping one or more times), phosphate cement, and paint. Head styles include, but are not limited to, flat, projection, cupped, oval, brad, headless, double, countersunk, and sinker. Shank styles include, but are not limited to, smooth, barbed, screw threaded, ring shank and fluted shank styles. Screw-threaded nails subject to this proceeding are driven using direct force and not by turning the fastener using a tool that engages with the head. Point styles include, but are not limited to, diamond, blunt, needle, chisel and no point.

PRC Nails Order, 73 Fed. Reg. at 44,961.

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Court No. 17-00231 Page 8

will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

The language of an antidumping duty order dictates its scope. See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("Duferco") (citing Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed Cir. 1995) ("Ericsson GE Mobile")). Commerce's regulations authorize it to issue scope rulings to clarify whether a particular product is within the scope of an order. See 19 C.F.R. § 351.225(a). To determine whether a product is within the scope of an ADD order, Commerce looks at the plain language of that order. See Duferco, 296 F.3d at 1097. When considering the scope language, Commerce will take into account descriptions of the merchandise contained in: (1) the petition; (2) the initial investigation; and (3) past determinations by the Commission and by Commerce, including prior scope determinations (collectively "(k)(1) sources"). 19 C.F.R. § 351.225(k)(1); see also 19 C.F.R. § 351.225(d). When the (k)(1) sources are not dispositive, Commerce will initiate a formal scope inquiry and further consider:

(i) The physical characteristics of the product;
(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product;
(iv) The channels of trade in which the product is sold; and
(v) The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k)(2).

Court No. 17-00231                                                                                    Page 9

Commerce has broad authority "to interpret and clarify its antidumping duty orders." Ericsson GE Mobile, 60 F.3d at 782; see also King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (stating that "Commerce is entitled to substantial deference with regard to its interpretations of its own antidumping orders."). However, Commerce may not interpret an order "so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citing Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).

In OMG the Court of Appeals acknowledged that "the language of the [Vietnam Orders] may not unambiguously define the universe of 'nails . . . constructed of two or more pieces' in every context." OMG, 972 F.3d at 1364. However, the Court of Appeals held that the Vietnam Orders were unambiguous with respect to the importer's anchors, that the anchors are not nails regardless of whether they are comprised of two-pieces, and that Commerce erred in focusing its analysis on the pin-component of the anchor. See id. at 1364–66.

In light of the Court of Appeals' ruling in OMG, the court reconsiders its ruling in Midwest I. The court retains the general power to reconsider non-final orders. See, e.g., Union Steel v. United States, 35 CIT 1647, 1659, 804 F. Supp. 2d 1356, 1367 (2011). U.S. Court of International Trade Rule 54(b) allows the court to revisit non-final determinations, as justice requires, meaning when necessary under the relevant circumstances. See Irwin Indus. Tool Co. v. United States, 41 CIT __, 269 F. Supp.

3d 1294, 1300–01 (2017). The court may consider "whether there has been a controlling or significant change in the law or whether the court previously 'patently' misunderstood the parties, decided issues beyond those presented, or failed to consider controlling decisions or data." Id. at __, 269 F. Supp. 3d at 1301 (citations omitted). OMG constitutes a controlling or significant change in the law that warrants reconsideration of the court's ruling in Midwest I.

The court reconsiders its ruling that the language of the PRC Nails Order is ambiguous as well as the court's consequent instruction to Commerce to perform a (k)(2) analysis. Although Midwest I observed that neither the words of the PRC Nails Order, prior scope rulings, nor the ITC report clarified what it meant for a product to be a nail constructed of two or more pieces, see Midwest I, 348 F. Supp. 3d at 1302, Commerce should now make its determination in accordance with the Court of Appeals' product-specific analysis of the scope of the Vietnam Orders. See OMG, 972 F.3d at 1364; compare Vietnam CVD Order, 80 Fed. Reg. at 41,006 (citations omitted), and Vietnam ADD Order, 80 Fed. Reg. at 39,994 (citations omitted), with PRC Nails Order, 73 Fed. Reg. at 44,961.[6] As such, the court remands the Second Remand Results for reconsideration in conformity with OMG.

---

[6] For the same reasons set forth in OMG, the Court of Appeals also affirmed this Court's decision in Simpson Strong-Tie Co. v. United States, 43 CIT __, 393 F. Supp. 3d 1251 (2019), aff'd, 818 Fed. Appx. 1019 (Fed. Cir. 2020), which concluded that certain zinc and nylon anchors were outside the scope of ADD and CVD orders covering steel nails from the PRC.

Court No. 17-00231 Page 11

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's redetermination is remanded for reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 60 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 14 days thereafter to file the Joint Appendix; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its remand redetermination.

        /s/ Claire R. Kelly
       Claire R. Kelly, Judge

Dated:    January 21, 2021
             New York, New York