# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MIDWEST FASTENER CORP., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MID CONTINENT STEEL & WIRE, INC., <br><br> Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Court No. 17-00231 |

## OPINION

[Sustaining the U.S. Department of Commerce's third remand redetermination that strike pin anchors are not within the scope of the antidumping duty order covering certain steel nails from the People's Republic of China.]

Dated: July 12, 2021

Robert Kevin Williams and Mark Rett Ludwikowski, Clark Hill PLC, of Chicago, IL. for plaintiff, Midwest Fastener Corp.

Sosun Bae, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the briefs were Patricia M. McCarthy, Assistant Director, Jeanne E. Davidson, Director, and Brian M. Boynton, Acting Assistant Attorney General. Of Counsel was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Adam Henry Gordon and Ping Gong, The Bristol Group PLLC, of Washington, DC, for defendant-intervenor, Mid Continent Steel & Wire, Inc.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") third remand determination filed pursuant to the court's order in Midwest Fastener Corp. v. United States, 45 CIT __, 494 F. Supp. 3d 1335 (Jan. 21, 2021) ("Midwest III"). See Final Results of Redetermination Pursuant to Ct. Remand [in Midwest III], March 22, 2021, ECF No. 104-1 ("Third Remand Results"). In Midwest III, the court remanded for a third time Commerce's determination that Midwest Fastener Corp.'s ("Midwest" or "Plaintiff") strike pin anchors are within the scope of the antidumping duty ("ADD") order covering certain steel nails from the People's Republic of China ("PRC"). See Midwest III, 45 CIT at __, 494 F. Supp. 3d at 1341–42; see also Midwest Fastener Corp. v. United States, 44 CIT __, __, 435 F. Supp. 3d 1262, 1272 (March 4, 2020) ("Midwest II"); Midwest Fastener Corp. v. United States, 42 CIT __, __, 348 F. Supp. 3d 1297, 1301–03 (Oct. 19, 2018) ("Midwest I"); [ADD] Order on Certain Steel Nails from the [PRC]: Final Ruling on Midwest Fastener Strike Pin Anchors, (Aug. 2, 2017), ECF No. 21-3 ("Final Scope Ruling"); Final Results of Redetermination Pursuant to Ct. Remand [in Midwest I], Apr. 25, 2019, ECF No. 61 ("First Remand Results"); Final Results of Redetermination Pursuant to Ct. Remand [in Midwest II], June 17, 2020, ECF No. 87-1 ("Second Remand Results"); Certain Steel Nails from the [PRC], 73 Fed. Reg. 44,961 (Dep't Commerce Aug. 1, 2008) (notice of [ADD] order) ("PRC Nails Order").

On August 28, 2020, the Court of Appeals for the Federal Circuit ("Court of Appeals") decided OMG, Inc. v. United States, 972 F.3d 1358 (Fed. Cir. 2020), aff'g 43 CIT __, 389 F. Supp. 3d 1312 (2019) ("OMG"), interpreting nearly identical language in the ADD and countervailing duty ("CVD") orders covering certain steel nails from, in pertinent part, the Socialist Republic of Vietnam ("Vietnam").

In Midwest III, the court reconsidered its ruling in Midwest I that the language of the PRC Nails Order is ambiguous and ordered Commerce to make its determination in accordance with the Court of Appeals' decision in OMG. See Midwest III, 45 CIT at __, 94 F. Supp. 3d at 1341. In its Third Remand Results, Commerce determines that Midwest's strike pin anchors do not fall within the scope of the PRC Nails Order. See Third Remand Results at 1. Both Midwest and Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent" or "Def.-Intervenor") submit comments agreeing with Commerce's Third Remand Results. See Pl.'s Cmts. on Remand Determination, Apr. 20, 2021, ECF No. 106 ("Pl.'s Cmts. on Third Remand Results"); Cmts. on Final Results Determination, Apr. 21, 2021, ECF No. 107 ("Def.-Intervenor's Cmts. on Third Remand Results"). Defendant United States ("Defendant") requests that the court sustain Commerce's Third Remand Results. See Def.'s Resp. to Cmts. on Remand Results, May 19, 2021, ECF No. 108 ("Def.'s Resp. Br."). For the following reasons, the court sustains Commerce's Third Remand Results.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Commerce, and now recounts those relevant to the court's review of the Third Remand Results. See Midwest III, 45 CIT at __, 494 F. Supp. 3d at 1337–40.

On August 1, 2008, Commerce issued the PRC Nails Order, which covers, in relevant part, "nails…constructed of two or more pieces." See PRC Nails Order, 73 Fed. Reg. at 44,961. In Midwest I, the court held that Commerce's determination that the PRC Nails Order unambiguously covers Midwest's strike pin anchors[1] was unsupported by substantial evidence and remanded for Commerce to conduct a formal scope inquiry and an analysis under 19 C.F.R. § 351.225(k)(2)(2017)[2] ("(k)(2) analysis"). Midwest I, 42 CIT at __, 348 F. Supp. 3d at 1302–06. On remand,

---

[1] Midwest is an importer of strike pin anchors. As explained in Midwest II:

> Midwest's strike pin anchors have four components—a steel pin, a threaded body, a nut and a flat washer. Midwest avers that the pin component is not meant to be removed from the anchor and can only be removed with the aid of a claw hammer or pliers. The strike pin anchor is prepared for use by first drilling a hole through an object, and then drilling another hole into the masonry upon which the object is to be attached. After the two holes are aligned, the anchor is pushed through the hole in the object and into the hole in the masonry. The nut and washer components are then tightened to orient and position the anchor, and the pin component is subsequently struck with a hammer. The action of striking the pin component expands the anchor body and results in the fastening of the desired item against the masonry.

Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1265–66 (citations omitted).
[2] Further citations to the Code of Federal Regulations are to the 2017 Edition.

Commerce continued to assert that the PRC Nails Order unambiguously covers Midwest's strike pin anchors, First Remand Results at 7–11, but conducted a (k)(2) analysis under protest. Id. at 11–19.

In Midwest II, the court held that Commerce's position that the scope of the order unambiguously covers Midwest's strike pins was unsupported by substantial evidence because Commerce's analysis did not reasonably demonstrate how the phrase "nails…constructed of two or more pieces" encompasses the strike pin anchors. See Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1267–71; see also PRC Nails Order, 73 Fed, Reg, at 44,961. The court also held that Commerce's (k)(2) analysis erred in several respects, see Midwest II, 44 CIT at __, 435 F. Supp. 3d at 1271–72, and rejected Commerce's attempt to find only the pin component dutiable. See id. at __, 435 F. Supp. 3d at 1272. On the second remand, Commerce again determined that the PRC Nails Order is unambiguous but conducted a revised (k)(2) analysis in light of Midwest II. See Second Remand Results at 6–28.

However, after the conclusion of the briefing of the Second Remand Results before this court, the Court of Appeals affirmed a decision of this court disposing of an appeal from Commerce's final ruling clarifying the scope of ADD and CVD orders covering certain steel nails from, in pertinent part, Vietnam. See generally OMG, 972 F.3d 1358; see also Certain Steel Nails from [Vietnam], 80 Fed. Reg. 41,006 (Dep't Commerce July 14, 2015) ([CVD] order) ("Vietnam CVD Order"); Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and

[Vietnam], 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015) ([ADD] orders) ("Vietnam ADD Order") (collectively "Vietnam Orders"). As in the PRC Nails Order, the pertinent language from the Vietnam Orders states that the orders cover "[c]ertain steel nails…of one piece construction or constructed of two or more pieces." Compare Vietnam CVD Order, 80 Fed. Reg. at 41,006 (citations omitted), and Vietnam ADD Order, 80 Fed. Reg. at 39,995 (citations omitted), with PRC Nails Order, 73 Fed. Reg. at 44,961.

On September 8, 2020, the court requested further submissions from the parties regarding their respective positions on the relevance of OMG to the disposition of this action. See Letter Req. Suppl. Briefing, Sept. 8, 2020, ECF No. 93. All parties indicated that whether Midwest's anchors fall within the scope of the order should be reconsidered in light of OMG. See Def.'s Resp. Ct.'s Order on Suppl. Briefing, Nov. 3, 2020, ECF No. 97; Def.-Intervenor's Resp. Ct.'s Order on Suppl. Briefing, Nov. 3, 2020, ECF No. 98; Pl.'s Resp. Ct.'s Order on Suppl. Briefing, Nov. 4, 2020, ECF No. 99.

On remand for the third time, Commerce determines that Midwest's strike pin anchors are not "nails…constructed of two or more pieces" and therefore are not covered by the PRC Nails Order. Third Remand Results at 5. All parties request that the court sustain Commerce's findings. See Pl.'s Cmts. on Third Remand Results at 1–2; Def.-Intervenor's Cmts. on Third Remand Results at 1; Def.'s Resp. Br. at 2.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction over Plaintiff's challenge to Commerce's scope determination pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[3] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting scope determinations that find certain merchandise to be within the class or kind of merchandise described in an ADD or CVD order. See 19 U.S.C. § 1516a(a)(2)(B)(vi); 28 U.S.C. § 1581(c) (2012). The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

Defendant argues that Commerce's Third Remand Results are supported by substantial evidence and are otherwise in accordance with law and asks the court to sustain the results. Def.'s Resp. Br. at 2. Both Plaintiff and Def.-Intervenor agree with the Third Remand Results and also ask the court to sustain the results. Pl.'s Cmts. on Third Remand Results at 1–2; Def.-Intervenor's Cmts. on Third Remand Results at 1. For the following reasons, the court sustains the Third Remand Results as supported by substantial evidence and otherwise in accordance with law.

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

The language of an antidumping duty order dictates its scope. See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("Duferco") (citing Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995) ("Ericsson GE Mobile")). Commerce's regulations authorize it to issue scope rulings to clarify whether a particular product is within the scope of an order. See 19 C.F.R. § 351.225(a). To determine whether a product is within the scope of an ADD order, Commerce looks at the plain language of that order. See Duferco, 296 F.3d at 1097. "[T]he first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous." ArcelorMittal Stainless Belgium N.V. v. United States, 694 F.3d 82, 87 (Fed. Cir. 2012). "If it is not ambiguous, the plain meaning of the language governs." Id.

Commerce has broad authority "to interpret and clarify its antidumping duty orders." Ericsson GE Mobile, 60 F.3d at 782; see also King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (stating that "Commerce is entitled to substantial deference with regard to its interpretations of its own antidumping orders.").

In OMG, the Court of Appeals held that the Vietnam Orders were unambiguous with respect to the importer's anchors, that the anchors are not nails regardless of whether they are comprised of two pieces, and that Commerce erred in focusing its analysis on the pin component of the anchor. See OMG, 972 F.3d at 1364–66. In Midwest III, the court ordered Commerce to reconsider its finding that

Midwest's strike pin anchors are covered under the PRC Nails Order in light of OMG. See Midwest III, 45 CIT at __, 494 F. Supp. 3d at 1341.

For its third remand, Commerce first compares the Vietnam Orders to the PRC Nails Order. Third Remand Results at 4–5. Commerce determines that the relevant language of the orders ("Certain steel nails may be of one-piece construction or constructed of two or more pieces") is identical and thus OMG is applicable to Commerce's analysis of whether Midwest's strike pin anchors are covered by the PRC Nails Order. Id.

Commerce then analyzes the similarity between Midwest's strike pin anchors to OMG, Inc.'s ("OMG") zinc masonry anchors at issue in OMG. Id. at 5. In OMG, the Court of Appeals found that OMG's zinc masonry anchors were unitary articles of commerce and must be analyzed as a single product. OMG, 972 F.3d at 1364–65. The Court of Appeals also determined that even though OMG's anchors require a hammer to be installed, nails are defined by their fastening mechanism (i.e. nails are "driven by impact through the materials to be fastened"), and OMG's anchors are not nails because they rely on a distinct fastening mechanism that relies not on impact but on the "[e]xpansion of the zinc body against the interior of the pre-drilled hole." Id. Commerce observes numerous similarities between Midwest's strike pin anchors and OMG's zinc masonry anchors and finds those similarities support the conclusion that Midwest's anchors are not covered by the PRC Nails Order. Third Remand Results at 5; compare OMG, 972 F.3d at 1364–65 with Midwest II, 44 CIT __, 435 F.

Supp. 3d at 1265–66. None of the parties challenges Commerce's redetermination. See Pl.'s Cmts. on Third Remand Results at 1–2; Def.-Intervenor's Cmts. on Third Remand Results at 1; Def.'s Resp. Br. at 2.

Commerce's analysis is reasonable, supported by substantial evidence, and in accordance with law. The record evidence supports Commerce's finding that Midwest's strike pin anchors are substantially similar to OMG's zinc masonry anchors and that the relevant language of the PRC Nails Order and the Vietnam Orders is identical. Compare OMG, 972 F.3d at 1364–65; with Midwest II, 44 CIT __, 435 F. Supp. 3d at 1265–66; and compare Vietnam CVD Order, 80 Fed. Reg. at 41,006 (citations omitted), and Vietnam ADD Order, 80 Fed. Reg. at 39,995 (citations omitted), with PRC Nails Order, 73 Fed. Reg. at 44,961. Therefore, Commerce reasonably determines that pursuant to the Court of Appeals' decision in OMG, Midwest's anchors are not "nails…constructed of two or more pieces" and are not covered by the PRC Nails Order.

All parties agree with Commerce's determinations in the Third Remand Results and request that the Third Remand Results be sustained. See Pl.'s Cmts. on Third Remand Results at 1–2; Def.-Intervenor's Cmts. on Third Remand Results at 1. Defendant notes that neither party challenges the results and asserts that the results "comply with the court's remand order, are supported by substantial evidence, and otherwise in accordance with law," and thus should be sustained. Def.'s Resp. Br. at 2. The court agrees, and the Third Remand Results are sustained.

## CONCLUSION

For the foregoing reasons, Commerce's <u>Third Remand Results</u> are supported by substantial evidence and comply with the court's order in <u>Midwest III</u> and are therefore sustained. Judgment will enter accordingly.

                                             /s/ Claire R. Kelly
                                             Claire R. Kelly, Judge

Dated:      July 12, 2021
             New York, New York